ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

December 14, 2004

Mr. Wayne Thorburn
Administrator
Texas Real Estate Commission
Post Office Box 12188
Austin, Texas 78711-2188

Opinion No. GA-0282

Re: Whether the Texas Real Estate Commission may establish by rule minimum service standards for a real estate broker who enters into an exclusive agency relationship with a party to a real estate transaction  (RQ-0224-GA)

Dear Mr. Thorburn:

You ask on behalf of the Texas Real Estate Commission (the "Commission") whether the Commission may establish by rule minimum service standards for a real estate broker who enters into an exclusive agency relationship with a party to a real estate transaction.[1]

## I.    Background and Legal Context

In November 2002, the Commission adopted an amendment to Texas Administrative Code, title 22, section 535.2.[2]  *See* 27 Tex. Reg. 9255-56 (2002), *adopted* 27 Tex. Reg. 10920 (2002) (codified at 22 TEX. ADMIN. CODE § 535.2).  The purpose of the amendment was to define "the minimum level of service that a consumer may expect to receive from a [real estate] broker who represents the consumer." 27 Tex. Reg. 10920 (2002). The Commission explained its reasoning for adopting the amendment at the time of the amendment's proposal, noting:

> This clarification is proposed based on concerns raised by various real estate industry organizations regarding limited service listing agreements.  A limited service listing agreement is an agreement by which a broker provides fewer services than those services provided for in a traditional real estate listing agreement.  A limited service agreement may provide for a menu of services or reduced fees for certain specified services rather than a full commission for the

---

[1] *See* Letter from Wayne Thorburn, Administrator, Texas Real Estate Commission, to Honorable Greg Abbott, Texas Attorney General (June 8, 2004) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2] *See* Brief from the Texas Association of Realtors, at 1 (July 6, 2004) [hereinafter TAR Brief]; *see also* 27 Tex. Reg. 10920 (2002) ("The Texas Real Estate Commission adopts an amendment to § 535.2 . . . without changes to the proposed text as published in the October 4, 2002, issue of the Texas Register (27 TexReg 9255).").

> complete range of brokerage services generally found in a traditional real estate agency relationship.
>
> In many cases under such listing, a real estate broker may provide no service to the seller except to place the listing in a Multiple Listing Service. Typically, the listing broker instructs the cooperating broker to contact the seller directly for all purposes (showings, presentations of offers, and negotiations).
>
> This practice raises several concerns for brokers who represent buyers interested in properties listed under limited service agreements. Often times the seller does not understand the complexities of the transaction and relies upon the cooperating broker for assistance and advice. The seller is reluctant to approach the limited service broker for assistance at the risk of incurring significant additional fees; in some cases the limited service broker will not provide the additional service. When the cooperating broker represents the buyer, the cooperating broker is uncomfortable about providing assistance or advice to the seller. Cooperating brokers also understand, however, that failing to provide the requested services to the seller may jeopardize the transaction or increase risks associated with the transaction.

27 Tex. Reg. 9255-56 (2002).

According to the Texas Association of Realtors ("TAR"), before the amendment to the rule was to take effect, a Texas broker filed for a temporary restraining order against the Commission claiming that the amended rule was contrary to chapter 1101 of the Occupations Code (the "Real Estate License Act"). *See* TAR Brief, *supra* note 2, at 1. Apparently, opponents objected that the new rule had the effect of prohibiting the use of limited service listing agreements by denying consumers the right to select and pay for only selected services with a licensed broker. *See* 28 Tex. Reg. 3951 (2003). However, "[t]he restraining order was granted on procedural grounds because the reasoned justification was omitted from the order adopting the rule." TAR Brief, *supra* note 2, at 1. In May 2003, the Commission repealed the amendment "for further study of the issue." 28 Tex. Reg. 3951 (2003). Now having studied the issue, the Commission again wishes to amend section 535.2 to define the minimum level of service that a consumer may expect to receive from a broker who represents the consumer. *See* Request Letter, *supra* note 1, at 3-4.

As background to the new proposed amendment, TAR informs us that in certain circumstances brokers enter into limited service listing contracts with real estate owners that grant "exclusive agency"[3] to the broker but limit the broker's duties merely to listing the property on a multiple listing service ("MLS"). *See* TAR Brief, *supra* note 2, at 2. These exclusive agency limited

---

[3]"Exclusive agency" is a term of art that Black's Law Dictionary defines as "[a]n agreement by owner that during life of contract he will not sell property to a purchaser procured by another agent, which agreement does not preclude owner himself from selling to a purchaser of his own procuring." BLACK'S LAW DICTIONARY 58 (5th ed. 1979).

service listing contracts specifically state that the listing broker will not negotiate for the seller/principal. *See id.* And though the use of the phrase "exclusive agency" in a listing contract does not grant the listing broker any additional powers or duties, this type of agency relationship is a necessary formality that enables the listing broker to list the property on a MLS. *See, e.g.,* North Texas Real Estate Information System, Inc., MLS Listing Rule § 7.01, *available at* http://www.ntreis.net /FormsAndDocs/rulesregs.htm (requiring that a listing broker must be, at a minimum, the exclusive agent of a seller to list a property); West Texas Regional MLS, art. 5 Listing Procedures, *available at* http://www.wtrmls.info/docs.shtml (requiring that a listing broker must be, at a minimum, the exclusive agent of a seller to list a property).

With respect to exclusive agency contracts, the Commission notes that section 1101.652 (b)(22) of the Occupations Code permits the Commission to revoke or suspend a real estate licensee's license if while acting as a broker or salesperson the licensee "negotiates or attempts to negotiate the sale, exchange, or lease of real property with an owner, landlord, buyer, or tenant with knowledge that the person is a party to an outstanding written contract that grants *exclusive agency* to another broker in connection with the transaction." Request Letter, *supra* note 1, at 2-3 (emphasis added); *see also* TEX. OCC. CODE ANN. § 1101.652(b)(22) (Vernon 2004). The Commission argues that these exclusive agency limited service listing contracts create a problem for the buyer's broker when a seller/principal attempts to negotiate the real estate transaction with the buyer's broker directly because, following the Commission's argument, any actual or attempted negotiation would subject the buyer's broker to penalties for violating section 1101.652(b)(22). *See* Request Letter, *supra* note 1, at 3-4.

The Commission argues that section 1101.652(b)(22) implicitly imposes on listing brokers who enter into an exclusive agency relationship with a seller the duty to negotiate, *see id.* at 3, and that this duty needs to be more clearly defined in the Commission's rules, *see id.* The Commission refers us to the current version of the rule, section 535.2, which it contends, in light of section 1101.652(b)(22), gives too general an outline of a real estate broker's duties when acting as an agent. *See id.*; *see also* 22 TEX. ADMIN. CODE § 535.2 (2004). Section 535.2 reads in relevant part:

> (b) A real estate broker acting as an agent owes the very highest fiduciary obligation to the agent's principal and is obliged to convey to the principal all information of which the agent has knowledge and which may affect the principal's decision. A broker is *obligated* under a listing contract *to negotiate* the best possible transaction *for the principal, the person the broker has agreed to represent.*

22 TEX. ADMIN. CODE § 535.2(b) (2004) (emphasis added). The Commission seeks to clarify the meaning of "to negotiate" as it is used in section 535.2(b) by amending section 535.2 to include three new subsections: (d), (e), and (f). *See* Request Letter, *supra* note 1, at 1-2.

Specifically, the three proposed subsections would read:

> (d) In negotiating for his or her principal a broker may not refuse to provide the following services when such services are appropriate in the transaction:

(1) accept and present to the principal offers and counter-offers to buy, sell, or lease the principal's property or property the principal seeks to buy or lease;

(2) assist the principal in developing, communicating, and presenting offers, counter-offers, and notices that relate to the offers and counter-offers; and

(3) answer the principal's questions relating to offers, counter-offers, and notices.

(e) Under § 1101.652(b)(22) of the Act a broker may not negotiate or attempt to negotiate the sale or lease of property with a principal with knowledge that the principal is a party to an outstanding written contract that grants exclusive agency to another broker. Under § 1101.652(b)(27) of the Act, a broker may not aid, abet, or conspire with another to circumvent the Act. A broker who represents a principal under a listing contract that grants an exclusive agency to the broker may not instruct or authorize another broker who represents another party in the transaction to negotiate directly with the principal.

(f) When a broker delivers an offer or counter-offer to another broker, the broker is not negotiating or attempting to negotiate with a principal he or she does not represent by delivering a copy of the offer or counter-offer to the principal he or she does not represent so long as the broker representing the principal consents to the delivery and the broker who makes the delivery does not discuss or attempt to discuss the terms or conditions of the offer or counter-offer with the principal he or she does not represent.

*Id.* These subsections purport to define a minimum service negotiation standard that all brokers who have entered into a relationship of representation with a client must meet, including exclusive agency limited service listing brokers who have by contract agreed with their principals not to negotiate. *See id.* at 3. The Commission asks us to evaluate its authority to adopt these proposed subsections. *See id.* at 1-3.

## II.    Analysis

Every state administrative agency is a creature of the legislature and has no inherent authority. *See Pub. Utils. Comm'n v. City Pub. Ser. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001) (citations omitted). A state agency has only those powers that the legislature expressly confers upon it, *see id.*, but when the legislature expressly confers a power on an agency, it also impliedly

intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties, *see id.* However, an agency may not exercise what is effectively a new power or a power contradictory to the statute. *See id.* With these principles guiding our discussion, we now turn to address individually the three proposed subsections that the Commission wishes to adopt and the authority of the Commission to adopt them.

The Commission's organic statute, the Texas Real Estate License Act (the "Act"), provides that "[a real estate broker] who represents a party in a real estate transaction acts as that party's agent." TEX. OCC. CODE ANN. § 1101.557 (Vernon 2004). The Act does not define the scope of a real estate broker's agency, but it does authorize the Commission to "adopt and enforce rules necessary to administer [the Act's chapter 1101] and Chapter 1102" and to "establish standards of conduct and ethics for persons licensed under [the Act's chapter 1101] and Chapter 1102." *Id.* § 1101.151(b)(1)-(2). Because agency, in this context, only describes a relationship of representation between a broker and the broker's client but does not by itself describe required representative acts, the legislature necessarily authorized the Commission to establish, within the confines of the Occupations Code, a standard of conduct with respect to a relationship of representation formed between a listing broker and the broker's client.

The Commission has already determined that "acting as an agent . . . [a] broker is obligated under a listing contract to negotiate the best possible transaction for the principal, the person the broker has agreed to represent." 22 TEX. ADMIN. CODE § 535.2(b) (2004). As a threshold matter, we believe that this rule is within the Commission's power to establish and enforce and it does not conflict with the statutory scheme created by the legislature. Furthermore, there is nothing that would prohibit the Commission from clarifying by rule what it means by "to negotiate" so long as that rule does not exceed the rule-making authority granted or necessarily implied by the legislature. *See generally, supra, City Pub. Ser. Bd. of San Antonio,* 53 S.W.3d 310 (citations omitted).

A.    **Proposed Subsection (d)**

reads:

We now turn to the Commission's proposed rule changes. Proposed subsection (d)

(d)  In negotiating for his or her principal a broker may not refuse to provide the following services when such services are appropriate in the transaction:

(1)  accept and present to the principal offers and counter-offers to buy, sell, or lease the principal's property or property the principal seeks to buy or lease;

(2)  assist the principal in developing, communicating, and presenting offers, counter-offers, and notices that relate to the offers and counter-offers; and

> (3) answer the principal's questions relating to offers, counter-offers, and notices.

Request Letter, *supra* note 1, at 1.

Proposed subsection (d) describes a standard of conduct with respect to a listing broker's relationship of representation with the broker's client. Specifically, this subsection defines the term "to negotiate" used in section 535.2(b), the Commission's extant rule. Moreover, proposed subsection (d) clearly expresses what is only implied by section 1101.652(b)(22). A listing broker who has been authorized to represent a client through an exclusive agency limited service listing contract must negotiate for that broker's principal in the manner prescribed by proposed subsection (d) because anything less would cause a violation of the Act. We therefore conclude that the Commission has the authority to adopt proposed subsection (d) because it is a rule that falls squarely within the Commission's rule-making authority and does not conflict with the Act's statutory scheme.[4]

## B.   Proposed Subsection (e)

Proposed subsection (e) reads:

> (e)   Under §1101.652(b)(22) of the Act a broker may not negotiate or attempt to negotiate the sale or lease of property with a principal with knowledge that the principal is a party to an outstanding written contract that grants exclusive agency to another broker. Under § 1101.652(b)(27) of the Act, a broker may not aid, abet, or conspire with another to circumvent the Act. A broker who represents a principal under a listing contract that grants an exclusive agency to the broker may not instruct or authorize another broker who represents another party in the transaction to negotiate directly with the principal.

*Id.* at 2.

This proposed subsection cites to section 1101.652 of the Act, which as addressed earlier, outlines conduct that is punishable by license suspension or revocation. *See* TEX. OCC. CODE ANN. § 1101.652 (Vernon 2004). This proposed rule reiterates only what the legislature has already determined to be prohibited behavior, and we conclude accordingly that the Commission is authorized to adopt such a rule.

---

[4]TAR writes: "The words 'may not refuse to provide' in the proposed Subsection (d) may cause some to believe that the broker only need provide the listed services under proposed Subsection (d) when asked by the client to provide the services." TAR Brief, *supra* note 2, at 8. We agree. While the Commission has the authority to adopt subsection (d) as proposed, to the extent it would create the impression that a listing broker in an exclusive agency contract need negotiate only when requested to do so by the broker's principal then the language contradicts section 1101.652(b)(22) of the Act. We suggest revising subsection (d) to employ mandatory language such as "must provide" or "shall provide" to avoid any such impression.

## C.      Proposed Subsection (f)

Proposed subsection (f) reads:

> (f)   When a broker delivers an offer or counter-offer to another broker, the broker is not negotiating or attempting to negotiate with a principal he or she does not represent by delivering a copy of the offer or counter-offer to the principal he or she does not represent so long as the broker representing the principal consents to the delivery and the broker who makes the delivery does not discuss or attempt to discuss the terms or conditions of the offer or counter-offer with the principal he or she does not represent.

*Id.*

We have already established that the Commission is permitted to clarify existing rules by adopting new ones so long as the new rules do not exceed the scope of the Commission's rule-making authority as granted by the legislature, and so long as the new rules do not conflict with the legislature's statutory scheme. Proposed subsection (f) further clarifies the meaning of "to negotiate" by describing conduct that would not constitute negotiation, and would not, therefore, violate the Commission's rules or the Act. It does not exceed the Commission's rule-making authority as granted by the legislature, nor does it conflict with the Act's statutory scheme. We conclude, for the same reasons we concluded that the Commission would be permitted to adopt proposed subsection (d), that the Commission would be permitted to adopt proposed subsection (f).

## S U M M A R Y

The Texas Real Estate Commission has proposed three rules that purport to clarify a listing broker's duties when negotiating for a client. Proposed Administrative Code section 535.2(d), which provides that a listing broker may not refuse to provide certain services to that broker's principal, is valid. Proposed Administrative Code section 535.2(e), which prohibits behavior already prohibited by Occupations Code section 1101.652, is valid. Finally, proposed Administrative Code section 535.2(f), which describes conduct that would not violate agency rules or the Texas Real Estate License Act, is valid.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee